## Richmond.

### GODWIN v. WHITEHEAD & ALS.

#### January 15th, 1892.

CORPORATION—*Suit to set aside reorganization—Laches.*—A trust deed was exe-
cuted in 1870 by street railway company to secure its bonds. In 1873,
becoming insolvent, company suspended. W., holder of 1,874 of the
2,000 shares and of $49,000 of the $50,000 of bonds, being elected presi-
dent, expended much money and greatly improved the situation. Trus-
tees having vacated, W. had others substituted by the court. W. then
became the purchaser. He failing, there was a second sale. In the
meantime no objections were made. In 1886, the property having
become valuable, G., owning three shares, brought suit for himself and
the other stockholders to set aside the reorganization and sale on the
ground of some alleged informality in the notice on which the order of
substitution was made;

HELD :

By laches complainant lost, if he had any, right to relief.

Appeal from decree of corporation court of city of Nor-
folk, rendered December 15th, 1887, in a suit wherein the
appellant, Thomas W. Godwin, for, &c., was complainant, and
John B. Whitehead and others were defendants.   Opinion
states the case.

*Burroughs & Bro.*, for appellant.

*Tunstall & Thom*, for appellees.

LACY, J., delivered the opinion of the court.

The bill in this cause was filed on the —— day of ——, 1886 or 1887. The exact date is not set forth in the record, nor in any note of argument filed here, but in the deposition of the plaintiffs' counsel, taken in 1887, that he advised the institution of the suit after March 15, 1886, after the court in the suit of *Roberts* v. *Whitehead and others* had refused to allow a bill to be filed in the name of the Norfolk City Railroad Company against John B. Whitehead and others, and, under his advice, a suit was brought in the name of one stockholder for the benefit of himself and other stockholders. It was filed by Thomas W. Godwin, suing for the use and at the costs of William A. Swank, and for all other stockholders of the Norfolk City Railroad Company. The Norfolk City Railroad Company is a street-railroad company, organized under an act of the general assembly passed January 4th, 1866. It was operated for some years, and in 1873 the superintendent, Mr. Joseph R. Garrett, in obedience to the resolution of the legislature of Virginia in relation to the form of annual reports of railroads and other companies, adopted March 15th, 1856, by the general assembly of Virginia, reported that the company was very greatly embarrassed, and without any organization; that it had neither president, board of directors, treasurer, secretary, nor other officer. On the 20th of April, 1874, the common council of the city of Norfolk called the attention of its street committee to the bad condition of the street railway, and directed them to have the same removed or put in better order. The company had run down, and had ceased to operate; was involved in what appeared to be a hopeless indebtedness. Its horses had been sold, and the harness. But little else was left except its track and franchises, and the track was in such condition as to threaten the safety of travelers along the streets of the city. At its organization under its charter it issued 2,000 shares, of the par value of $50 each. On the 1st of April, 1870, issued $50,000 of 8 per cent. coupon bonds, and conveyed its property to secure them. The appellant, Godwin, in June,

1871, purchased three shares of stock, which he has transferred
to W. A. Swank, for whose benefit this suit is brought in the
name of Godwin. The object of the bill was to set aside the
reorganization of this company, which had been affected, and to
have a receiver appointed, etc. It is set forth that the appel-
lees have caused the road to be sold for its debts, under a sale
which was void, for want of notice in legal form; and that the
purchase of the same by Whitehead, the holder of the bonds,
and his subsequent formation of a new company, are all void.
The appellees, by their answers, admit the sale and ownership
of the three shares claimed by Godwin, and by him assigned to
Swank, and also the execution of the deed of 1870, and the order
of the court of March, 1881, substituting trustees, White and
Whitehead, in lieu of those named in the deed; and admit also
the sale by the substituted trustees to J. B. Whitehead, the
holder of the $50,000 bonds of the company, as is alleged, and
$49,000 of which is conceded to belong to Whitehead; and that
Whitehead also held, by purchase, 1,874 of the 2,000 shares of
the company; and says that about February, 1873, a large
bondholder, named Sellers, finding the property and the fran-
chises of the road abandoned, whereby his debt was liable to be
a total loss to him, took posession of the property and under-
took to manage it; that, the stock being regarded as and being
worthless, none of the stockholders or officers objected; that
the company was heavily in debt for running expenses and
outfit beyond its bonded indebtedness, and in 1874 one of its
general creditors filed a bill to subject the property to the pay-
ment of the company's debts; that in that year the operations
of the company ceased altogether, and that the superintendent
reported the company to the board of public works as being
without organization, and in the same year the common coun-
cil of the city of Norfolk took steps looking to its removal out
of the streets of the city as a nuisance and obstruction to the
legitimate use of the streets. The rails were displaced and
bent, and the contiguous pavement full of holes, and generally

out of order. Under these circumstances, John B. Whitehead, who was largely interested in the bonds and stock of the company, came forward to see what could be done to save all from an impending total loss, and was elected president of the company September 17, 1874; and because he had taken, to save a bad debt, 1,874 shares of stock, and $2,400 par value of the bonds of the company, he was forced to undertake the task of resuscitating the company, and bought teams and made extensive repairs; that Godwin knew his stock was worthless, and neither he nor any other stockholder except Whitehead would do anything; and the road being pressed with debt and threatened by its creditors, he was obliged to and did purchase $49,-000 of the bonded debts, and believed he had the whole $50,000, and bought up the stock at nominal prices—$1 a share—a good deal being given to him, as the owners knew that the company was insolvent and the stock worthless, and that it was due to his exertions and achievements that the company did not cease to exist in 1874 or in 1875; and that he, holding these bonds and stock in 1881, employed counsel to have trustees substituted by the court in lieu of those named in the deed of 1870, made to secure these bonds, and one having removed beyond the limits of the state and become a non-resident, and the other being dead, that notice was given of the motion to substitute these trustees by publication in a Norfolk paper, in which city of Norfolk, Godwin resided. There was no objection from any source, and on the 9th day of March, 1881, the order was made, and White and one H. C. Whitehead were substituted by the court. In December following these trustees, being so required by the beneficiaries under the deed, made the sale, and the appellee, J. B. Whitehead, became the purchaser, at the price of $20,000, at public auction, in the presence of a large concourse of the people drawn together by the notice of the sale. The purchaser then formed a new company, expended more money, and finally raised the road to a high state of efficiency.

During all this time Godwin took no notice of the company, and claimed no interest in it; and subsequently Swank, who had been counsel for Roberts in the suit lately decided here, but not reported, of *Roberts* v. *Whitehead*, which was decided adversely to the pretensions of Roberts, both in the corporation court and in this court, believing that he had discovered an informality in the notice for the substitution of the trustees, in that the notice, as he claimed, showed that it was proved by the certificate of the business manager of the newspaper instead of by the certificate of the editor or the affidavit of any other person, bought without price the three shares of Godwin stock, took an assignment to himself, and brought this suit upon a speculative idea; and Roberts attempted to come in again, by petition, and try his fortune once more on the demands decided against him, but the court below dismissed the plaintiff's bill, and refused to allow the petition of Roberts to be filed, or the petition of some others, claiming small amounts of the old stock. From this action of the court the appeal is here.

The sale under the deed of 1870 is claimed to be void because made without notice, and therefore without jurisdiction. But the court below decided expressly that the notice was sufficient. What the proof was we need not inquire. There was no appeal from this decision, and there can be none now. There is no proof in the record that the alleged defective notice was the evidence relied upon by the court. It is not made a part of the record in any way, and other proof may have been before the court. The court, while a court of general jurisdiction, was proceeding under the authority of a special statute, and in that respect may be conceded to be a court of special and limited jurisdiction; and yet the record expressly shows that the order was made upon a sufficient and legal notice, and there was no objection and no appeal, and there is no proof to the contrary. The appellant has been guilty of the grossest laches in the assertion of his claim, if any he had.

He has waited until he has seen a change of circumstances, and what was worthless has been made valuable. If he could, by some defect in the proceedings, have had them annulled, and the old company rehabilitated, he has delayed too long, and John B. Whitehead has, in his turn, failed, and these properties, rights and franchises have passed by assignment to his creditors, and are held by subsequent purchasers, without notice of his supposed rights; and, if he had discovered and availed of any sufficient defect in the proceedings in the matter, he would yet come in questionable guise, seeking to set aside all the transactions herein for the benefit of Swank, who owned nothing, or of Godwin, who claimed nothing, during all this time, and throughout all these proceedings. But yet, again, the action had herein was, by the direction of a large majority of the stockholders of the company of which he claims to be a member, approved and ratified. Did they not represent him? This action was put in motion by creditors whose debts exceeded the value of the property two-fold and more. If he had come forward, then he could have accomplished nothing; and suppose his wishes were gratified, and the new company rehabilitated, he would still be in a small, insignificant minority of the stockholders, and could not prevent his antagonist, the owner of more than 1,800 shares out of the 2,000, from outvoting his three shares. He could still accomplish nothing. His claim is, in every view, without merit; and the corporation court of Norfolk did not err in dismissing his bill, and we are of opinion to affirm the same.

FAUNTLEROY, J. (dissenting) said:

I dissent from the opinion just read in this case. This cause comes up on an appeal from a final decree of the corporation court of the city of Norfolk, rendered on the 15th day of December, 1887, dismissing the bill of complainants, in a suit instituted in that court styled Thomas W. Godwin (who sues

for the benefit of W. A. Swank and others, stockholders of the Norfolk City Railroad Company, complainants,) against John B. Whitehead and others, defendants. The object of which suit, by and on behalf of certain holders of the capital stock of the original Norfolk City Railroad Company, is to impeach and to have annulled and set aside certain proceedings had in the history of said original company, for irregularity and illegality; and, also, to assert and have protected the rights of the stockholders of said original company, and to ascertain its condition, to adjust its affairs and judicially administer its assets in the interest of its stockholders and creditors.

It appears from the record filed that a company was incorporated by the legislature of Virginia on the 4th of January, 1866, by the corporate name of "The Norfolk City Railroad Company," for the purpose of constructing and operating a street railroad in that city; and that the company was regularly organized and went into operation under its said charter. It issued 2,000 shares of capital stock of the par value of $50 per share.

On the 8th of July, 1870, the charter of this company was amended by the legislature giving it, among other things, certain franchises in the *county* of Norfolk as well as in the city of Norfolk. Under this amended charter, the company, after the 8th of July, 1870, acquired certain real estate outside of the city of Norfolk and in the county of Norfolk, among other property a lot on which they erected a depot, stables, &c.

This company, by the order of its board of directors, in order to construct its railroad, issued its forty bonds, each of the denomination of $1,000, and its twenty bonds, each of the denomination of $500, dated April 1st, 1870, and bearing interest at eight per cent., payable semi-annually to J. M. Walker and John Clark or bearer, the *principal* being payable in Philadelphia, on the 1st of April, 1890. To secure the principal and interest on these bonds, the said company, by the authority of its board of directors, executed its deed of trust,

bearing date on the said 1st day of April, 1870, and duly signed by William H. Armstrong, its president, and countersigned by A. D. Childrey, its treasurer, whereby the said company conveyed to said J. M. Walker and John Clark, trustees, the survivor of them, or their successors or assigns, " all the property and estate, real, personal and mixed" of said company, " situated, lying and being in the *said city* of Norfolk," consisting of the track constructed, and to be constructed, &c., together also with such other real estate as may be acquired by the said parties of the first part *in said city of Norfolk.*" It is provided in the said deed of trust " that if the principal be paid on 1st of April, 1890, the ' deed shall cease and be determined ; '" but, that on default made in payment of the principal or interest, the said Walker and Clark, the survivor, successors or assigns, shall enter on and take possession of the property therein granted, and sell or dispose of the same, or any part thereof, and pay the amount *then* due on said bonds, and the balance pay to the grantors.

In June, 1871, this company issued to Thomas W. Godwin, appellant, a certificate numbered 132, for three shares of its capital stock; which he, prior to the institution of this suit, assigned and transferred to W. A. Swank. In September, 1874, John B. Whitehead, appellee, was elected president of this (original) company, and so continued. In 1881, the said John B. Whitehead, still president of the said company, instructed the law firm of White & Garnett to have new trustees substituted in the place of the trustees named in the trust deed of April 1st, 1870, J. M. Walker, alleged to have removed out of the state of Virginia, and John Clark, said to be dead. Messrs. White & Garnett were employed by J. B. Whitehead, as president, and by him for himself; they supposing (as White says in his deposition) that Whitehead was the owner of all the bonds secured in the said deed of trust of April 1st, 1870; whereas, in fact, he was not owner of all the bonds nor of all the stock. Messrs. White & Garnett, attor-

neys, proceeded by motion in the corporation court of Norfolk city, at its March. term, 1881, for the substitution of H. C. Whitehead and William H. White as trustees in place of J. M. Walker and John Clark, original trustees in the deed of trust of April 1, 1870. It was made to appear by a subsequent deposition, that said J. M. Walker had left the state and was resident in California, and that said John Clark was dead; but no proof of either of these facts was exhibited to the corporation court of Norfolk city on the hearing of the motion.

The *notice* given was addressed to " J. M. Walker and John Clark, or their respective personal representatives." They are not designated as trustees in the address, and the notice is that " *we* " will move the corporation court of Norfolk city, on the 7th day of March, 1881, to substitute, &c.; and it is signed " White & Garnett, attorneys for the grantors and beneficiaries in said deed."

The grantors in said deed were the stockholders composing the Norfolk City Railroad Company, and the *beneficiaries* were the bondholders and the said shareholders, for *all* of whom the said attorneys were *not* counsel. This notice was published in the " *Public Ledger*," a daily newspaper printed in the city of Norfolk, for *ten* days, from 22nd February to 3rd of March, 1881. The motion was not docketed in the corporation court on the 7th of March, 1881, nor was it continued, so far as the record shows; but it was made on the 9th day of March, 1881, in the name of the Norfolk City Railroad Company and of the beneficiaries in said deed, and the court made the substitution. The record shows that three of the 1,000 shares of stock issued by the company were in the hands of the shareholders other than J. B. Whitehead, or in the hands of their *bona-fide* assignees; and that *one*, at least, of the bonds for $1,000 and interest, secured by the deed of April 1st, 1870, was outstanding, and was not owned by J. B. Whitehead, nor represented by White & Garnett, and that no notice to the holders of these shares or of this bond was given.

It appears, also, from the record that in December, 1873, before J. B. Whitehead became president of the company, the stock actually subscribed for was $100,000, and the gross earnings $10,000, and the debt bonded or funded $50,000.

There were no proceedings had to ascertain the debts and condition of the company, nor to show any default in payment of *interest* on their bonds, and the bonds themselves were not due for nearly ten years (1890); and yet the substituted trustees, H. C. Whitehead and William H. White, on 31st December, 1881, after an advertisement of *ten* days only, sold, in a lump, the entire property of the company—(that *outside* as well as that *inside* the city of Norfolk, both that included in the deed of trust of April 1st, 1870, and that *not* therein included)—to John B. Whitehead, personally, for $20,000, he being the president of the company; and by their deed of that same date conveyed the entire property, franchises, and rights of the Norfolk City Railroad Company to John B. Whitehead, as his own individual property. Thereupon, the said John B. Whitehead, in writing of 31st of December, 1881, as purchaser of the entire assets of the said company, proceeded to institute a *new* company, by the name of the *old* company, and claiming to be, in and of himself, the Norfolk City Railroad Company (the old one being dissolved and defunct), he issued 2,000 shares of stock in the said new company—1,500 shares to himself, 500 to and among his wife and H. C. Whitehead, trustee, and others.

On the 1st of June, 1885, a deed was executed in the name of the Norfolk City Railroad Company, by John B. Whitehead, as president, and attested by H. C. Whitehead, as treasurer, conveying to H. C. Ellis the property of the said (*new*) company in trust to secure the principal and interest on $75,000, to be borrowed by the said company.

The said John B. Whitehead had previously to-wit, on the 9th of April, 1885, in a general assignment made to Alfred P. Thom, trustee, to secure Whitehead's personal creditors,

VOL. LXXXVIII—77

included and assigned his said 1,500 shares of stock .in the said new company.

No judicial proceedings appear to have been had to ascertain the condition of the Norfolk City Railroad Company—its earnings, expenditures and indebtedness—from September, 1874, to March, 1881, the period of John B. Whitehead's presidency of the said original company; and the record exhibits no reports of the same to either the directors or stockholders .of the company, nor to the state in all that period of nearly seven years.

In November, 1885, a bill was filed in the said corporation court of Norfolk city by L. W. Roberts against John B. Whitehead to liquidate the affairs of the Norfolk City Railroad Company, but the bill was dismissed by the court, without a decision on the merits, by decree of 24th January, 1887, solely on the ground that Roberts had *no interest* and therefore no right of action.

Subsequently this suit at bar was instituted. John B. Whitehead being in possession and still *de jure* president of the original company, though now claiming that it was dissolved, and that the new company, composed of himself, his wife, and associates, in possession of the assets and the appropriated name of the original company, was the only Norfolk City Railroad Company in existence; and he having refused to allow the name of the Norfolk City Railroad Company to be used in any suit against his company, this suit was unavoidably brought in the name of a *bona-fide* holder of shares of stock in the original company, on behalf of himself and of all other stockholders in the original company, several of whom came into the suit by petition.

This suit was upon final hearing dismissed by the corporation court *on the merits*, by its decree of December 15th, 1887, which is the decree appealed from.

The Norfolk City Railroad Company, under its charter, con-. structed and operated a street railroad in the city of Norfolk

for nearly four years, when on the 1st of April, 1870, it sought to borrow $50,000 to enable it more effectually to make the road efficient and successful; and to this end it issued its bonds of the denominations of $1,000 and $500—forty for $1,000 each, and twenty for $500 each—bearing eight per cent. interest, payable half yearly, and evidenced by coupons, and the principal of the bonds payable April 1st, 1890, in Philadelphia. The said bonds were payable to J. M. Walker and John Clark, *or bearer*, they then, it seems, being residents of Virginia.

To secure these bonds, principal and interest, the company, by its then president, W. H. Armstrong, executed its deed of April 1st, 1870, conveying to the payees of the said bonds, said Walker and Clark, *as trustees*, all its property, rights and franchises in the city of Norfolk on trusts declared in said deed, to-wit: If no default were made in the payment of the interest on said bonds and the principal when due, " then these presen's shall cease "; but if default were made in payment of interest or principal, then the said Walker and Clark, trustees, their survivor, successors, or assigns, should have the right and duty to enter on and take possession of the property hereby granted, and sell the same at public auction, at the best price they can obtain, and pay the net proceeds to the holders of said bonds and obligations, and the residue, if any, to the said company. On the 1st of April, 1870, the company had no assets *outside* of the city of Norfolk.

The company continued to operate the road in the streets of Norfolk city; and it appears that in November, 1871, the sum of $55,000 had been paid to the bondholders; and, that in 1873, the gross earnings of the company amounted to $10,000 for that year. In September, 1874, John B. Whitehead (appellee) was elected president of the company, and the record shows that thenceforward the whole affairs of the company and its earnings were controlled, managed and received by him for a period of nearly *seven* years, without any report or exhibit by him of his acts and doings, or of the earnings of

the road, or his disposition thereof, or of the condition of the road and the liabilities of the company. In March, 1881, the president, J. B. Whitehead, *ex mero motu*, in both his official and individual character, claiming to be then owner of *all* the bonds secured in the deed of trust of April 1st, 1870 (which the proof shows he was not), employed Messrs. White & Garnett as attorneys for the company, and for himself (and without any authority from the stockholders or the directors), apply to the corporation court of the city of Norfolk for the substitution in the stead of the original trustees, Walker and Clark, of H. C. Whitehead and William H. White as trustees in the deed of trust of April 1st, 1870. Walker had removed from the state, and Clark had died, and so far as the record shows, he had died a resident of Virginia.

A suit in equity—which would have brought in all the parties in interest, bondholders, creditors and stockholders, and opened up an inquiry and settlement of all questions of account, condition of the company—debts and disposition of assets—including the acts and doings of the president, John B. Whitehead, for the previous seven years, was not adopted; but the short and summary proceeding, by motion, was pursued. This being a summary proceeding, only authorized by the statute, and not within the *general* jurisdiction in equity, must be in strict conformity with the explicit terms of the statute; and the record of the proceeding, in such special matter, must show what each step taken was, and its exact conformity to the requirements of the statute; and the proceedings by motion not being within the general jurisdiction of the court, the presumption of regularity does not arise. It must appear by the record that the court, in the exercise of its special jurisdiction, has kept itself within the strict terms of the statute, which is the sole source of its jurisdiction. The record of the action of the corporation court on this motion does not show this.

The attorneys, White & Garnett, in their own name, as attorneys for the grantors and beneficiaries in the deed of

April 1, 1870, published for only ten days, from 22d February, 1881, to 3rd March, 1881, a notice to J. M. Walker and John Clark, or their respective personal representatives, that " we will move, &c., on the 7th of March, 1881," &c.   This was all the notice—no effort to notify Walker in California, and no averment or affidavit of his non-residence, nor of the death of Clark—no attempt at personal service on either, or to have a personal representative appointed for Clark.   The motion was not docketed on the 7th of March, nor continued so far as the record shows (and it is essential that it should do so), and it was made on the 9th of March, and, of course, was undefended—when the court granted the motion and substituted H. C. Whitehead and W. H. White as trustees in the stead of Walker and Clark—no notice was given or addressed to the creditors, nor the stockholders of the company, though it is in evidence that there was such, the plaintiff in this suit (appellant here) being one, the whole proceeding being a loose and reckless disregard of individual rights.

The next step was the advertisement, for *ten* days in two papers published in Norfolk, of a sale by the new trustees of the entire assets of the Norfolk City Railroad Company. · The sale was accordingly made on the 31st of December, 1881, and John B. Whitehead became the purchaser for $20,000, and on that day the new trustees made their deed conveying all the property of the Norfolk City Railroad Company, that *within* and that *without* the city of Norfolk—included and not included in the deed of trust of April 1, 1870, to John B. Whitehead.   And John B. Whitehead, at once assuming that the original company was dissolved and that he, as purchaser, was an inchoate new company, took the name as well as the assets of the " Norfolk City Railroad Company," and issued 2,000 shares of stock in said new company—1,500 shares to himself, and 500 shares to his " associates," among whom were his wife and H. C. Whitehead, one of *the substituted trustees.*

. The so called new company, to secure a loan of $75,000,

issued its bonds, at six per cent. interest, and made a deed conveying to H. C. Ellis, trustee, the property of the wrecked original company which the substituted trustees had sold and conveyed to John B. Whitehead, its president, for $20,000. The said John B. Whitehead, however, having before that date, made his deed of trust assigning his whole 1,500 shares of stock, to A. P. Thom, trustee, for his individual creditors.

The corporation court of Norfolk city heard and decided this cause *on its merits*—all demurrers having been withdrawn; and it dismissed the complainant's bill. We are of opinion that it erred in so doing. The record presents the case of a bold, unscrupulous and systematic wrecking of a corporation by its own president, using his official position to destroy it for his own individual advantage. To sanction a proceeding such as is exhibited in the record of this cause, would put every corporation at the mercy of its president, and destroy the security of the rights and interests of all corporators. The applications for substitution of trustees was made on the bare order of the president of the company, on behalf of himself, personally as well as officially, without any sanction by the body of stockholders or the directors. There is no evidence of the propriety or need of such substitution; no proof of unpaid interest, and the bonds themselves not due for ten years; no averment or proof of non-residence or death of the trustees named in the deed; no charge of infidelity or want of diligence in discharge of their trust; no legal or other reason given for the substitution of new trustees in the stead of those chosen and constituted by the company, except the arbitrary, unauthorized suggestion of the president, for his own aims and ends. The only pretence of notice of the motion, was a vague advertisement, by attorneys, that " they " (" *we* ") would make the motion on the 7th of March, published in one paper printed in Norfolk city, only from 22d of February to 3rd of March, 1881; while the statute expressly requires *ten* days notice by *personal* service, or four weeks *by*

*publication.* And the motion was for the *7th* of March, but was not made till the 9th of March; meanwhile, there being no information in the record of any docketing or continuance, *non constat*, that it was not dropped on the 7th of March. Certain it is, that *motion* was not made and docketed and continued on the 7th of March—the day named in the *notice*—such as it was. 1 Rob. Practice (old ed.), 590. The record of the court failing to show that the proceeding was strictly in compliance with the requirements of the statute giving the *special* jurisdiction for the summary proceeding, the *regularity* cannot be presumed from the *general* jurisdiction of the court.

But the notice itself is a part of the record in this case, and being by publication for ten days only, it is on its face, defective, and shows that the corporation court had no jurisdiction to hear, still less to grant the motion, and that the order making the substitution is void, and all the dependent and subsequent proceedings are null.

But more than this, the proceeding of the new or substituted trustees to enforce the trust of the deed of April 1, 1870, by sale, was wholly unjustifiable and contrary to equitable practice and rules. The deed is a peculiar one, partaking in great measure of the nature of a mortgage ; and equity requires that, when such lien or security for a default of payment is to be enforced, the default shall be first ascertained judicially and the liens on the subject be audited. In this case there is no proof of default in the payment of *interest*, and the *principal* of the debt secured by the deed was not due for ten years. The record shows, that in 1871, $55,000 of interest had been settled, most of it in *cash*, and that in 1873, the gross earnings of the company for that year, just before J. B. Whitehead became its president, had been $10,000. He controlled the management and received the income of the company for seven years, from 1874 to 1881, and he is responsible for any failure. During all that period he made no report and no exhibit of his administration of the affairs of the company; and in 1885, he and

his associates offer as security for a loan of $75,000 what he had bought for $20,000, at a sale which was made after only ten days advertisement in two local papers. If the affairs of the company had become complicated, and there had been default in payment of interest, it was after and while J. B. Whitehead was its president, and he never made any report or exhibit of his transactions—as such. He was in possession, control and management, receiving the revenues of the company, and he must account for them and apply them to the reduction of the mortgage debt. 2 Jones on Mort., § 1114. He may have acquired a majority of the stock and of the bonds of the company, but not all, and the *minority* have, at least, the equity to have their vested rights extinguished legally—only after a full audit and judicial determination of the affairs of the corporation. Whatever may have been the condition of the original company it should have been judicially ascertained and determined, before selling it; and, in the absence of all accounts, the presumption is, that the condition of the company was sound, while the record shows no default— for which, under the provisions of the deed of April 1st, 1870, the trustees were authorized to sell. The suit at bar is in the name of Thomas W. Godwin, an original stockholder of three shares of the capital stock of the original company, issued to him in 1871, who sues on behalf of his *bona-fide* assignee, W. A. Swank, and all other stockholders of the said company; and the object of the suit is to set aside and annul all the proceedings had—the notice, the motion, the substitution of trustees, and the sale made by the said trustees on the 31st of December, 1881, to John B. Whitehead, purchaser, to declare the original company not dissolved and still in existence; and to have an inquiry into the condition, assets and liabilities of the said company, and especially to investigate the accounts, actings and doings of its president, J. B. Whitehead, and other officers, and to settle the affairs of the company definitively. The suit is by stockholders (not against a

stranger or an outsider) but against the officers of the company, who refused to allow the suit to be brought in the name of the company, and seeking protection in the only tribunal and in the only mode open to them.  I believe the decree appealed from is erroneous, and that the same should be reversed and annulled.

I am, for the foregoing reasons, constrained to dissent from the opinion of the majority of the court in this case, as well as to the facts disclosed in the record as to the reasoning and the result.

DECREE AFFIRMED.